UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CENCERIA DALCOURT** | **CIVIL ACTION NO.** |
| **VERSUS** | **JUDGE:** |
| **CITY OF PORT ALLEN; AND ROGER BERGERON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY** | **MAGISTRATE JUDGE:** |

**COMPLAINT**

The Complaint of CENCERIA DALCOURT, a resident of the full age of majority of Livingston Parish, Louisiana, respectfully represents:

1.

Jurisdiction herein is founded pursuant to 28 U.S.C.§1331 (federal question) and 28 U.S.C. §1367. Venue is proper within the Middle District as the majority of the incidents sued upon occurred within this judicial district.

2.

The Defendants listed below are justly and truly indebted to Ms. Dalcourt for all sums as are reasonable under the premises, compensatory damages, lost wages and benefits, back pay, front pay in lieu of reinstatement, punitive damages, attorney's fees, all costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief to which Ms. Dalcourt is entitled at law or in equity:

    A.    City of Port Allen (hereinafter referred to as "the City"), a municipal entity incorporated under the laws of the State of Louisiana; and

    B.    Roger Bergeron, individually and in his official capacity as Mayor of Port Allen, a resident of the full age of majority of West Baton Rouge Parish, Louisiana.

Page -1-

Case 3:13-cv-00063-JJB-RLB   Document 1   01/29/13   Page 1 of 12

3.

This lawsuit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; 42 U.S.C. §1981 and the 1st and 14th Amendments to the U.S. Constitution, through 42 U.S.C. §1983; Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*; and Louisiana anti-reprisal law, La. R.S. 23:967.

4.

On or about April 19, 2010, Ms. Dalcourt was hired by the City as Assistant Chief Administrative Officer (CAO) in the Administration Department. Around December 2011, Ms. Dalcourt became the interim CAO. Effective July 11, 2012, Ms. Dalcourt was terminated. Ms. Dalcourt is African-American.

5.

At all times pertinent hereto, Ms. Dalcourt was an "employee" of the City within the meaning and intent of federal and Louisiana law. At all times pertinent hereto, the City was the "employer" of Ms. Dalcourt within the meaning and intent of federal and Louisiana law, and upon information and belief, employed greater than 500 employees.

6.

At all pertinent times, Mayor Derek Lewis was the Mayor of the City, was an agent and employee of the City, and was Ms. Dalcourt's supervisor with immediate and successively higher authority over her employment. Mr. Lewis is African-American.

7.

At all pertinent times, Roger Bergeron was the Mayor of the City, was an agent and employee of the City, and was Ms. Dalcourt's supervisor with immediate and successively higher authority

over her employment. Mr. Bergeron is Caucasian. As Mayor, Mr. Bergeron had final policy-making authority on employment-related decisions.

8.

Also in April 2010, Philip Mason, African-American male, was hired as Assistant Chief Financial Officer in the Administration Department. Both Ms. Dalcourt and Mr. Mason were hired by Mayor Lewis, over the strenuous objections of the City Council's three Caucasian members. When Mayor Lewis informed the City Council that Ms. Dalcourt and Mr. Mason were being hired, these Caucasian members became furious and expressed their dissatisfaction. These members wanted to hire Caucasian individuals for these jobs. One Caucasian member even requested that the starting salaries of Ms. Dalcourt and Mr. Mason be reduced.

9.

Beginning in April 2010, Ms. Dalcourt was subjected to severe and pervasive, offensive and unwelcome sexually-based comments and behavior by Mayor Lewis. These include, without limitation:

- A. On numerous occasions, Mayor Lewis offered sex to Ms. Dalcourt and expressed what he could do to her with his manhood;

- B. In August 2010, at an LMA conference out of town, Mayor Lewis made several lewd comments about other women present at the conference, and propositioned Ms. Dalcourt for sex and made sexual comments to her. Mayor Lewis also called Ms. Dalcourt's hotel room constantly;

- C. In April 2011, when Ms. Dalcourt and Mr. Mason were in the Mayor's office, Mayor Lewis told her: "If you give [City contractor - name omitted] some sex, then surely

you would give me some. I don't mind getting some gushy seconds.";

D. Several times, Mayor Lewis made inappropriate comments about Ms. Dalcourt's appearance and dress;

E. Mayor Lewis constantly made lewd comments about Mr. Mason, in front of Ms. Dalcourt, including that Mr. Mason had a young d**k, that his d**k just probably jumps up for no reason, and that Mr. Mason probably goes around town f**king everything.

10.

Mayor Lewis sexually harassed Ms. Dalcourt and created a hostile work environment for her. She opposed his unlawful sexual harassment, to no avail. Because she opposed his sexual advances, Mayor Lewis retaliated against Ms. Dalcourt by harassing her and treating her in an extremely hostile way, subjecting her to harsher scrutiny and criticism, yelling at her and slamming doors, giving her very short time frames to complete assignments, and threatening her job. Ms. Dalcourt was in constant fear of losing her job because of Mayor Lewis' retaliatory actions.

11.

Mayor Lewis has a history of sexually harassing female employees. In 2006, a former female police officer was subjected to sexual harassment and hostile work environment by Mayor Lewis. She reported the sexual harassment to the City, to no avail, and ultimately filed a charge with the Equal Employment Opportunity Commission.

12.

On or about June 9, 2011, Mr. Mason submitted a written complaint to the City, opposing the unlawful sexual harassment and hostile work environment by Mayor Lewis. The next day,

Mayor Lewis held a meeting with all Administration employees without Mr. Mason present, disclosing Mr. Mason's confidential complaint and speaking negatively about Mr. Mason to his co-workers.

13.

Ms. Dalcourt was interviewed as part of the City's internal investigation of the unlawful conduct by Mayor Lewis. In her interview, she reported and opposed the unlawful sexual harassment and hostile work environment inflicted on her by Mayor Lewis. Ms. Dalcourt also informed the interviewer that she was scared of this information becoming public, and she was told the only way it would become public is if she made it public by filing a formal lawsuit.

14.

At the end of June 2011, Mayor Lewis resigned and pled guilty to racketeering in connection with the Operation Blighted Officials sting conducted by the FBI. Mayor Pro Tem R.J. Loupe became Interim Mayor.

15.

On or about September 28, 2011, Ms. Dalcourt submitted a sworn charge to the Equal Employment Opportunity Commission alleging sexual harassment and retaliation for her opposing the unlawful sexual harassment. On or about October 25, 2011, Ms. Dalcourt sent a completed Intake Questionnaire to the EEOC. On November 23, 2011, Ms. Dalcourt submitted to the EEOC a signed and dated "Charge of Discrimination" (Charge No. 461-2012-00070).

16.

In November 2011, Roger Bergeron was elected Mayor, and Mr. Loupe returned to Mayor Pro Tem.

17.

In June 2012, Ms. Dalcourt was denied a promotion to CAO. In May 2012, Mayor Bergeron advertised the position of CAO without telling Ms. Dalcourt, even though she had been working as interim CAO for several months and had been originally hired as assistant CAO with the understanding she would be promoted to CAO when the CAO retired. Ms. Dalcourt applied for the CAO position.

18.

Three City Council members (all Caucasian) interviewed the candidates for the CAO position, which included Ms. Dalcourt. Mayor Bergeron tried to slide the matter into the agenda without posting it the previous week. At the June 13, 2012 meeting, the City and Mayor Bergeron hired Adrian Genre (Caucasian) as CAO. Mr. Genre previously pled guilty to and served time in prison for lying under oath about his racially discriminatory hiring practices while he was Chief of Police. As CAO, Mr. Genre is responsible for all hiring decisions for the City. At the meeting, a City Council member admitted that Ms. Dalcourt's qualifications were superior to Mr. Genre's. Ms. Dalcourt publicly complained that the decision was unfair, and that she was not selected as Assistant CAO because of her race.

19.

Thereafter, Ms. Dalcourt and Mayor Bergeron were discussing her job, and she again complained to Mayor Bergeron that she was being racially discriminated against. Mayor Bergeron told Ms. Dalcourt that she could remain employed to train Mr. Genre, but that there would no longer be an assistant CAO position. Because of the extreme stress and anxiety caused by Defendants' unlawful acts toward Ms. Dalcourt, she was forced to take a leave of absence.

20.

Another African-American, Mr. Mason, was also denied a promotion – to Chief Financial Officer (CFO). Like Ms. Dalcourt, Mr. Mason had also reported and opposed the unlawful sexual harassment to the City and filed an EEOC charge. Mr. Mason was not interviewed for the CFO job, nor was the other qualified African-American candidate. The position was given to Audrey McCain (Caucasian), who was less qualified than Mr. Mason. Ms. McCain did not meet the minimum qualifications for the job and did not have any governmental accounting experience.

21.

While Ms. Dalcourt was on leave, she heard from other employees that she was being terminated. She later received a letter from Mayor Bergeron, on July 12, 2012, stating she was being terminated effective July 11, 2012. The asserted reason for her termination was "dishonesty and insubordination"; however, this was a pretext for unlawful retaliation and race discrimination.

22.

Or about August 17, 2012, Ms. Dalcourt submitted to the EEOC a signed and dated "Charge of Discrimination" alleging retaliation and race discrimination (Charge No. 461-2012-01515).

**COUNT ONE**

23.

Ms. Dalcourt was subjected to sexual harassment and a hostile work environment by Mayor Derek Lewis. The City had knowledge of Mayor Lewis' propensity to sexually harass female employees, yet did nothing to stop, prevent, or correct the conduct.

24.

By these actions, the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.

Case 3:13-cv-00063-JJB-RLB   Document 1   01/29/13   Page 7 of 12

§2000e *et seq.,* and Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:303 *et seq.*

25.

Ms. Dalcourt has complied with all administrative requirements prior to filing suit under Title VII and LEDL. She timely filed a charge with the Equal Employment Opportunity Commission alleging sexual harassment - Charge No. 461-2012-00070. She received a Notice of Right to Sue dated November 5, 2012.

**COUNT TWO**

26.

Acting in good faith, Ms. Dalcourt opposed Mayor Lewis' unlawful sexual harassment and hostile work environment, filed an EEOC charge alleging sexual harassment and retaliation, opposed unlawful race discrimination to Mayor Bergeron, and publicly protested the racial discrimination at a City Council hearing. Because of her protected activity, Ms. Dalcourt was retaliated against in the following, non-exclusive, ways: (1) retaliatory harassment and hostile work environment, including being treated in an extremely hostile way, subjecting her to harsher scrutiny and criticism, yelling at her and slamming doors, giving her very short time frames to complete assignments, and threatening her job; (2) denied promotion to CAO; and (3) termination from employment.

27.

By these retaliatory actions, Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.;* Louisiana's anti-reprisal law, La. R.S. 23:967; and Ms. Dalcourt's civil and constitutional rights under the 1st Amendment to the U.S. Constitution, for which she seeks redress through 42 U.S.C. §1983.

Case 3:13-cv-00063-JJB-RLB   Document 1   01/29/13   Page 8 of 12

28.

At all times pertinent hereto, the City's agents and employees, including Mayor Bergeron, were persons acting under color of state law within the meaning and intent of 42 U.S.C. §1983.

29.

At all times pertinent hereto, Ms. Dalcourt enjoyed clearly established rights to report and oppose unlawful conduct, including sexual harassment and racial discrimination, by the City and its agents and employees, all as guaranteed pursuant to the 1st Amendment to the U.S. Constitution. In addition, Ms. Dalcourt enjoyed clearly established rights to file a charge with the Equal Employment Opportunity Commission and to publicly protest such unlawful conduct. Defendants' retaliation against Ms. Dalcourt abridged, impaired and interfered with her clearly established rights of free speech and association under the 1st Amendment.

30.

At all times pertinent hereto, the City's agents and employees, including Mayor Bergeron, acted according to a policy or custom of the City and violated Ms. Dalcourt's clearly established rights to be free of unlawful retaliation. As Mayor, Mr. Bergeron had final policy-making authority on employment-related decisions. Moreover, the City had knowledge of, and ratified, these clear and obvious violations of Ms. Dalcourt's constitutional rights.

31.

Ms. Dalcourt has complied with all administrative requirements prior to filing suit under Title VII and LEDL. She timely filed two charges with the EEOC alleging retaliation (Charge Nos. 461-2012-00070 and 461-2012-01515) and received her Notice of Right to Sue dated November 5, 2012.

**COUNT THREE**

32.

Defendants discriminated against Ms. Dalcourt on the basis of her race in the following, non-exclusive, ways: (1) denied promotion to Chief Administrative Officer; and (2) termination from employment.

33.

By these actions, Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.;* Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*; and Ms. Dalcourt's civil and constitutional rights under 42 U.S.C. §1981 and the 14th Amendment to the U.S. Constitution, for which she seeks relief pursuant to 42 U.S.C. §1983.

34.

At all times pertinent hereto, the City's agents and employees, including Mayor Bergeron, were persons acting under color of state law within the meaning and intent of 42 U.S.C. §1983.

35.

At all times pertinent hereto, the City's agents and employees, including Mayor Bergeron, acted according to a policy or custom of the City and violated Ms. Dalcourt's clearly established rights to be free of racial discrimination in the making and enforcing of contracts. As Mayor, Mr. Bergeron had final policy-making authority on employment-related decisions. Moreover, the City had knowledge of, and ratified, these clear and obvious violations of Ms. Dalcourt's civil rights.

36.

Furthermore, Ms. Dalcourt enjoyed clearly established rights to Equal Protection of the Laws, as guaranteed by the 14th Amendment to the U.S. Constitution. Defendants violated these rights by taking adverse employment actions against her because of her race. There was no legitimate

Case 3:13-cv-00063-JJB-RLB   Document 1   01/29/13   Page 10 of 12

governmental interest served by this unconstitutionally differential treatment.

37.

Ms. Dalcourt has complied with all administrative requirements prior to filing suit under Title VII and LEDL. She timely filed a charge with the EEOC alleging race discrimination (Charge Nos. 461-2012-01515) and received her Notice of Right to Sue dated November 5, 2012.

**********

38.

The City is *respondeat superior* liable under Louisiana law for the unlawful conduct of its employees described herein.

39.

As a result of the incidents sued upon herein, Ms. Dalcourt has sustained damages which include, without limitation, past and future lost wages and benefits, including back pay and front pay in lieu of reinstatement; lost anticipated wages due to a wage increase; lost anticipated wages which would have resulted from a denied promotion; lost promotional opportunities, promotion and advancement; severe emotional distress, mental anguish, humiliation, and embarrassment; damage to reputation; loss of earning capacity; expenses in finding comparable employment; and all such other damages as will be more fully shown at trial.

40.

By the actions described above, Defendants have engaged in intentional discrimination and with malice and/or reckless indifference to the federally protected rights of Ms. Dalcourt, and thus are liable for punitive damages.

41.

Ms. Dalcourt is entitled to and desires an award of attorney's fees, litigation expenses, and all such other relief to which she is entitled at law or in equity, pursuant to federal and Louisiana law.

42.

Ms. Dalcourt is entitled to and requests a trial by jury.

WHEREFORE, Complainant, Cenceria Dalcourt, prays for a trial by jury and after due proceedings are had, that there be judgment in her favor and against defendants, City of Port Allen; and Roger Bergeron, Individually and in his Official Capacity, for all sums as are reasonable under the premises, compensatory damages, lost wages and benefits, back pay, front pay in lieu of reinstatement, punitive damages, attorney's fees, all costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief to which Complainant is entitled at law or in equity.

Respectfully submitted:

/s/Robert L. Campbell
Robert L. Campbell - La. Bar Roll No. 27986
Dustin G. Flint - La. Bar Roll No. 30890
WILLIAMSON, FONTENOT & CAMPBELL, LLC
343 Royal Street
Baton Rouge, LA 70802
Telephone: (225) 383-4010
Facsimile: (225) 383-4114
robb@lawyerbatonrouge.com

*Attorneys for Complainant Cenceria Dalcourt*